## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| RYAN HAWKINS and TAMARA KIRTLEY, individually and on behalf all others similarly situated, | ) ) ) | |
| | ) | **CASE NO. 1:22-cv-00258-RMR-NRN** |
| Plaintiffs, | ) ) | |
| | ) | **CLASS ACTION** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| STARTEK, INC. | ) ) | |
| Defendant. | ) ) | |

---

### PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
David K. Lietz
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
Email: dlietz@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

*Attorneys for Plaintiffs and the Putative Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 2

II.    CASE SUMMARY ........................................................................................ 3

    A.    The Data Incident ............................................................................... 3

    B.    Procedural Posture ............................................................................. 4

III.    SUMMARY OF SETTLEMENT ................................................................ 5

    A.    Settlement Benefits ............................................................................ 5

        1.    Documented Ordinary Expenses and Lost Time Reimbursement ............. 5

        2.    Documented Extraordinary Expense Reimbursement ................................ 7

        3.    Credit Monitoring and Identity Theft Protection Services ........................ 8

        4.    Security-Related Improvements .................................................................. 9

    B.    Class Notice and Settlement Administration ................................... 9

    C.    Claims, Exclusions, and Objections ................................................. 10

    D.    Attorneys' Fees and Expenses .......................................................... 12

    E.    Service Awards to Named Plaintiffs ................................................. 13

    F.    Release ............................................................................................. 13

IV.    LEGAL AUTHORITY ................................................................................ 14

V.    LEGAL DISCUSSION ............................................................................... 16

    A.    The Court Should Certify the Proposed Class for Settlement Purposes ............... 16

        1.    The Settlement Class is so Numerous that Joinder is Impracticable ........ 18

        3.    Plaintiffs' Claims and Defenses are Typical of the Settlement Class Members ............................................................................................. 19

        4.    Plaintiffs and Their Counsel will Provide Fair and Adequate Representation for the Settlement Class .......................................... 20

        5.    Certification is Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment is Superior ........................ 21

    B.    The Settlement Terms are Fair, Adequate, and Reasonable ................................ 23

        1.    Whether the Proposed Settlement Was Fairly and Honestly Negotiated . 24

        2.    Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt ................................................ 25

        3.    Whether the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation ............... 26

        4.    The Judgment of the Parties that the Settlement is Fair and Reasonable . 29

    C.    The Proposed Settlement Administrator Will Provide Adequate Notice ............. 30

    D.    Appointment of the Claims Administrator .......................................... 32

Case No. 1:22-cv-00258-RMR-NRN    Document 41    filed 08/16/22    USDC Colorado
pg 3 of 42

E.    Appointment of Settlement Class Counsel ......................................................... 32

VI.    CONCLUSION.............................................................................................................. 32

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Adamson v. Bowen*,
   855 F.2d 668 (10th Cir.1988) ................................................... 20

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................. 17

*Ark. Educ. Ass'n v. Bd. of Educ.*,
   446 F.2d 763 (8th Cir. 1971) .................................................. 18

*Bass v. PJCOMN Acquisition Corp.*,
   No. 09-CV-01614-REB-MEH, 2011 WL 2149602 (D. Colo. June 1, 2011) .......................... 20

*Billittri v. Sec. Am., Inc.*,
   Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ........ 31

*CGC Holding Co., LLC v. Hutchens*,
   773 F.3d 1076 (10th Cir. 2014) ............................................... 23

*Circle v. Jim Walter Homes, Inc.*,
   535 F.2d 583 (10th Cir. 1976) ................................................ 18

*DG v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ............................................... 18

*Feder v. Electronic Data Sys. Corp.*,
   429 F.3d 125, 130 (5th Cir. 2005) ............................................ 20

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) .................... 25, 27

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   2010 WL 2643307 (S.D.N.Y. June 25, 2010) .................................... 26

*Hapka v. CareCentrix, Inc.*,
   2018 WL 1871449 (D. Kan. Feb. 15, 2018) .................................... 22

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) .................................... 22

*In re Beef Indus. Antitrust Litig.*,
    607 F.2d 167 (5th Cir. 1979) ........................................................................... 14

*In re Brinker Data Incident Litig.*,
    No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508  (M.D. Fla. Apr. 14, 2021) (slip copy) ...... 17

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    No. 11-CV-1363, 2012 WL 92498 (E.D. La. Jan. 10, 2012).................................... 14

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ........................................................................... 19

*In re Equifax Inc. Cust. Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ....................................................................... 17

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013)............................................................................ 26

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 17

*In re King Resources Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976)..................................................................... 23

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
    No. 19-MD-2879, WL 1396522 (D. Md. May 3, 2022)........................................ 17

*In re OPM* ............................................................................................................ 27

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
    310 F.R.D. 300 (E.D. La. 2015) .................................................................. 14, 15

*In re Ribozyme Pharma., Inc. Sec. Litig.*,
    205 F.R.D. 572 (D. Colo. 2001) ....................................................................... 21

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. Oct. 20, 1993)........................................................... 14

*In re Target Cust. Data Breach Litig.*,
    309 F.R.D. 482 (D. Minn. 2015) ...................................................................... 17

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) .................................................... 22

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1 (D.D.C. 2017)...................................................................... 27

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. June 21, 2019)......................................................... 27

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3rd Cir. 2004) ..................................................................... 24

*Jones v. Nuclear Pharmacy, Inc.*
   741 F.2d 322 (10th Cir. 1984) .............................................................. 23, 24

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007)................................................................. 15

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ...................................................... 15, 18, 24

*Maez v. Springs Auto. Group, LLC*,
   268 F.R.D. 391 (D. Colo. 2010) ................................................................ 20

*Martinez v. Reams*,
   No. 20-cv-00977-PAB-SKC, 2021 WL 603054 (D. Colo. Feb. 16, 2021) (slip copy) ........... 24

*Miller v. Woodmoor Corp.*,
   619 F.2d 65 (10th Cir. 1980) .................................................................... 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).............................................................................. 30

*N.E. Health Care Emp. Pension Fund v. Woodruff*,
   520 F.3d 1255 (10th Cir. 2008) ................................................................. 15

*Nakkhumpun v. Taylor*,
   No. 12-CV-01038-CMA-CBS, 2015 WL 6689399 (D. Colo. Nov. 3, 2015)......................... 15

*Paz v. AG Adriano Goldschmeid, Inc.*,
   No. 14CV1372DMS(DHB), 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016).......................... 27

*Pliego v. Los Arcos Mexican Restaurants, Inc.*,
   313 F.R.D. 117 (D. Colo. 2016) ................................................................ 20

*Reiskin v. Reg'l Transp. Dist. Colo*,
   No. 14-CV-03111-CMA-KLM, 2017 WL 5990103 (D. Colo. July 11, 2017) ...................... 14

*Rex v. Owens ex rel. State of Okl.*,
   585 F.2d 432 (10th Cir. 1978) ................................................................. 18

*Rhodes v. Olson Assocs., P.C.*,
    308 F.R.D. 664 (D. Colo. 2015) ............................................. 16

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................... 30

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ....................................... 15, 23

*Soseeah v. Sentry Ins.*,
    No. CIV 12-01091 RB/KK, 2016 WL 7435792 (D. N.M. Sept. 6, 2016) ............................. 19

*Stott v. Capital Fin. Servs.*,
    277 F.R.D. 316 (N.D. Tex. 2011) ......................................... 31

*Tuten v. United Airlines, Inc.*,
    41 F.Supp.3d 1003 (D. Colo. May 19, 2014) ........................... 14

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 2
    81 F.R.D. 641 (W.D. Okl. 2012) .......................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, S.Ct. 2541, 180 L.Ed.2d 374 (2011).................. 16, 19

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) .......................................... 15

*Williams v. First Nat. Bank*,
    216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910)..................... 16

*Woodward v. NOR-AM Chem. Co.*,
    No. Civ-94-0870, 1996 WL 1063670 (S.D. Ala. May 23, 1996)……………………………28

**Statues, Rules, and Regulations**

Fed. R. Civ. P. 12(b)(6)................................................................ 26

Fed. R. Civ. P. 23 ....................................................... 16, 19, 24, 31

Fed. R. Civ. P.  23(a) ............................................................. 16, 21

Fed. R. Civ. P.  23(a)(1)................................................................ 18

Fed. R. Civ. P.  23(a)(2)................................................................ 18

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 19, 20

Fed. R. Civ. P.  23(a)(4) ............................................................................................... 20

Fed. R. Civ. P.  23(b)(3) .............................................................................. 16, 17, 21, 23

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 10, 30

Fed. R. Civ. P.  23(e) ............................................................................................. 14, 24

Fed. R. Civ. 23(e)(2) .............................................................................................. 16, 23

Fed. R. Civ. P.  23(e)(A)(B)(i)-(ii) ............................................................................... 14

Fed. R. Civ. P. 56 .......................................................................................................... 26

**Other Authorities**

2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018) ............................................... 24

2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) ......................... 14

2 Newberg & Conte, *Newberg on Class Actions* § 11.25 (3d ed. 1992) ..................................... 16

*Manual for Complex Litigation* ............................................................................ 16, 31

*Manual for Complex Litigation* § 21.631 (4th ed. 2004) ............................................. 14

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ............................................. 16

*Manual for Complex Litigation* § 30.44 (4th ed. 2004) ............................................... 15

Plaintiff Ryan Hawkins and Tamara Kirtley, individually and on behalf of others similarly situated ("Plaintiffs"), hereby move this Court to:

1.      Preliminarily approve the settlement described in the "Settlement Agreement" between Plaintiffs and Defendant Startek, Inc. ("Startek" or "Defendant"), and the attachments thereto, including the Short Notice, the Long Notice, the Claim Form, and the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, attached to the Declaration of David K. Lietz, filed herewith in support of this Motion;

2.      Conditionally certify the Settlement Class;

3.      Appoint Plaintiffs Ryan Hawkins and Tamara Kirtley as Settlement Class Representatives;

4.      Appoint David K. Lietz and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC as Settlement Class Counsel;

5.      Approve a customary short form notice to be mailed to Settlement Class Members (the "Short Notice") in a form substantially similar to that attached as Exhibit B to the Settlement Agreement;

6.      Approve a customary long form notice (the "Long Notice") to be posted on the Settlement Website in a form substantially similar to the one attached as Exhibit C to the Settlement Agreement;

7.      Direct Notice to be sent to the Settlement Class Members in the form and manner proposed as set forth in the Settlement Agreement and Exhibits B and C thereto;

8.      Appoint Atticus Administration, LLC as Claims Administrator;

9.      Approve the use of a Claim Form substantially similar to that attached as Exhibit D to the Settlement Agreement; and

1

10.    Set a hearing date and schedule for final approval of the Settlement and consideration of Settlement Class Counsel's motion for award of fees, costs, expenses, and service awards.

This Motion is based upon: (1) this Motion; (2) the Declaration of David K. Lietz, filed herewith; (3) the Settlement Agreement; (4) the Notices of Class Action Settlement (including the Long Notice and Short Notice); (5) the Claim Form; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.  The proposed settlement is fair, reasonable, and adequate, and meets all the criteria for preliminary approval under the Federal Rules of Civil Procedure. In support of this Motion, Plaintiffs hereby submit the following Memorandum of Law.

## I.    INTRODUCTION

This class action arises out of Startek's alleged failure to safeguard the personally identifiable information ("PII") that it maintained regarding Plaintiffs and Settlement Class Members.[1] On December 23, 2021, Startek determined that an unauthorized individual "gained access to and obtained data" from the Startek computer network on June 26, 2021 (the "Data Incident"). *Amended Class Action Complaint* ("Amended Complaint" or "A.C.") ¶ 33. Had Startek "properly monitor[ed] … [its] computer network and systems that housed the … [PII]," Plaintiffs allege that Startek "would have discovered the intrusion sooner." *Id.* ¶ 9. The third-party criminal allegedly was able to gain and obtain data from Startek regarding Plaintiffs' PII, including their names, dates of birth, and Social Security numbers Plaintiffs and Settlement Class Members. *Id.*

---

[1] The capitalized terms used in this Motion shall have the same meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

¶¶ 35-36. Subsequently, this lawsuit was filed asserting claims of: (1) negligence; (2) breach of implied contract; and (3) invasion of privacy by intrusion (the "Litigation"). Startek denies all liability and wrongdoing.

Since filing the Amended Complaint, the Parties have engaged in numerous settlement discussions and have exchanged information regarding the Data Incident, including the size of the Settlement Class. After extensive discussion and protracted arms' length negotiations, the Parties were able to reach an agreement on all the principal terms of settlement for this matter, subject to final mutual agreement on all necessary documentation. In the months following the execution of Proposed Settlement Terms, the Parties continued to negotiate the finer points of the Settlement Agreement and accompanying notice documents. The Settlement Agreement and various exhibits (the "S.A."), attached as Exhibits 2(A) through (E), were finalized and signed in August 2022. The Parties have reached a settlement that is fair, adequate, and reasonable. Accordingly, Plaintiffs respectfully request this Court grant their proposed Preliminary Approval Order.

II.    **CASE SUMMARY**
    A.    **The Data Incident**

In the Amended Complaint, Plaintiffs make the following allegations: Startek is a "customer experience management solutions provider." A.C. ¶ 23. According to Startek's website, it "helps its clients break down the complexity of their customer lifecycle and helps customers build and sustain emotional connections with its clients' brands." *Id.* ¶ 24. In the ordinary course of business as an employer, Startek received "extremely sensitive, personal, and private information" of Plaintiffs and Settlement Class Members, including names, dates of birth, and Social Security numbers. *Id.* ¶¶ 1-2, 28, 31, 36, 44-45.

Plaintiffs allege that Startek experienced a targeted cybersecurity incident on June 26, 2021 when an unauthorized individual "gained access to and obtained data" from the Startek computer

network. *Id.* ¶ 33. Startek allegedly became aware of the incident on December 23, 2021. *Id.* ¶¶ 21, 33. Had Startek "properly monitor[ed] … [its] computer network and systems that housed the … [PII]," Plaintiffs allege that Startek "would have discovered the intrusion sooner." *Id.* ¶ 9. The PII contained in the files accessed by the cybercriminal allegedly was not encrypted. *Id.* ¶ 37. The stolen PII of Plaintiffs and Settlement Class Members allegedly contained "at least … [their] names, dates of birth, and Social Security numbers." *Id.* ¶¶ 35-36. According to the Amended Complaint, Startek sent Plaintiffs notice of the Data Incident, dated January 21, 2022, informing them that their PII was "accessed" and "acquired" by cybercriminals in the Data Incident. *Id.* ¶¶ 20, 39, 92. Plaintiffs allege that Startek failed to provide "timely and adequate notice" to Plaintiffs and the Settlement Class Members of the Data Incident. *Id.* ¶ 6.

### B.    <u>Procedural Posture</u>

On January 28, 2022, Plaintiffs filed a Class Action Complaint against Startek in the United States District Court, District of Colorado, *Hawkins, et al. v. Startek, Inc.*, Case No. 1:22-cv-00258. A.C. ¶¶ 115-180; ECF 1. Plaintiffs filed the Amended Complaint on April 13, 2022. ECF 14. On April 27, 2022, Startek filed a Motion to Dismiss the Amended Complaint. ECF 15. Since then, the Parties fully briefed the Motion to Dismiss the Amended Complaint. ECF 26, 32.

Based on the Parties' arms'-length settlement negotiations and an informal exchange of information, on June 10, 2022, the Parties filed a Joint Notice of Settlement and Motion for Stay of Case Management Deadlines ("Joint Notice"), notifying the Court that the Parties reached an agreement, in principle, to settle the Litigation on a class-wide basis and moving the Court to stay all Case Management deadlines while the Parties continued to finalize the terms of the Settlement Agreement and facilitate the filing of a Motion for Preliminary Approval of Class Action Settlement. ECF 33. The Parties also moved the Court to hold the currently pending Motion to

4

Dismiss in abeyance, pending Court approval of the proposed settlement. *Id.* On June 13, 2022, the Court granted the Parties' Joint Notice. ECF 35. Over the next several weeks, the Parties diligently drafted and negotiated the finer points of the Settlement Agreement, and the Settlement Agreement and accompanying notice forms ("S.A.") and claim form were finalized.

## III.    SUMMARY OF SETTLEMENT

The proposed settlement will provide substantial relief to a proposed Settlement Class consisting of: "All persons to whom Startek sent a notice of the Data Incident on or about January 21, 2022." S.A. ¶ 1.23. The Settlement Class specifically excludes:

> Startek, and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) Judge Regina M. Rodriguez and Magistrate Judge N. Reid Neureiter and her/his staff and family; and (iv) any Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

*Id.* The Settlement Class includes approximately 24,819 individuals. Declaration of David K. Lietz ("Lietz Decl."), ¶¶ 14, 31, attached as Exhibit 1.

### A.    Settlement Benefits

The Settlement negotiated on behalf of the Settlement Class provides for two separate two separate forms of monetary relief: (1) reimbursement for documented ordinary out-of-pocket expenses, documented fees for credit reports, credit monitoring, or other identity theft insurance product, and lost time, all of which are subject to a $500 per Class Member cap; and (2) reimbursement of documented extraordinary expenses up to $4,500 per Class Member. S.A. ¶¶ 2.1.1-2.1.4.

### 1.    Documented Ordinary Expenses and Lost Time Reimbursement

The first category of payments is designed to provide reimbursement for documented ordinary out-of-pocket expenses incurred as a result of the Data Incident, for documented fees for

credit reports, credit monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the end of the Claims Deadline incurred as a result of the Data Incident, and for lost time to compensate Settlement Class Members for time spent dealing with the effects of the Data Incident. S.A. ¶ 2.1.1-2.1.3. Reimbursable ordinary out-of-pocket ordinary expenses include: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; or (vi) gasoline for local travel. To receive reimbursement for documented ordinary out-of-pocket expenses and for documented fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the end of the Claims Deadline incurred as a result of the Data Incident, a Class Member must submit a Valid Claim and supporting documentation. *Id.* S.A. ¶ 2.1.1-2.1.2. In submitting a Claim Form, a Settlement Class Member must affirm under the laws of the United States that information and documents submitted are true and correct. *Id.*

In addition, Settlement Class Members are also eligible to receive reimbursement for up to four (4) hours of lost time spent dealing with the Data Incident (calculated at the rate of $15/hour), but only if at least one (1) full hour was spent dealing with the Data Incident. *Id.* ¶ 2.1.3. The Class Member must merely attest that any claimed lost time was spent responding to issues raised by the Data Incident, provide a brief description of the activity or activities engaged in to address the Data Incident, and an approximation of the time spent on each activity. *Id.*

Claims made for lost time can be combined with reimbursement for the above-referenced documented ordinary out-of-pocket expenses incurred as a result of the Data Incident and documented fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the Claims Deadline incurred as a result

of the Data Incident and are subject to the same $500.00 cap for all Settlement Class Members. *Id.* ¶ 2.1.1-2.1.3.

2.  <u>Documented Extraordinary Expense Reimbursement</u>

The second category provides for reimbursement of extraordinary expenses, up to $4,500 per Settlement Class Member, if the Settlement Class Member can show through the class process that the monetary loss: (i) is actual, documented, and unreimbursed, with documented proof of loss to be submitted with the claim; (ii) is more likely than not caused by the Data Incident; (iii) occurred between June 26, 2021 and the Claims Deadline; and (iv) is not already covered by one or more of the above-referenced reimbursed expenses; and the Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* ¶ 2.1.3.

Startek's maximum payment obligation under the Settlement Agreement for any and all claims made for reimbursement for documented ordinary out-of-pocket expenses, for documented fees for credit reports, credit monitoring, or other identity theft insurance product, for lost time, and for extraordinary losses is $475,000.[2]

For monetary relief not cashed or activated by Settlement Class Members and on the expiration of all Settlement Class Members' right to receive said monetary relief, the Claims

---

[2] If approved claims under documented ordinary out-of-pocket expenses, documented fees for credit reports, credit monitoring, or other identity theft insurance products, lost time, and extraordinary losses exceed the maximum payment obligation, the Claims Administrator shall modify the monetary proceeds to be distributed to affected Settlement Class Members on a pro rata basis. S.A. ¶ 2.2.

Administrator shall submit the total of all such uncashed monetary relief to the Electronic Privacy Information Center, which promotes internet privacy. *Id.* ¶ 10.13.

### 3. Credit Monitoring and Identity Theft Protection Services

In addition to the potential monetary benefits, Plaintiffs negotiated for significant additional credit monitoring and identity theft protection services for the Settlement Class. Settlement Class Members who previously claimed the 12-month Experian Identity Works credit monitoring and identity theft protection services, with one bureau ("1B") credit monitoring services and $1 million identity theft protection ("Experian Identity Works"), offered by Startek in the Data Incident response, will automatically receive two (2) additional years of Experian Identity Works without the need to file an affirmative claim. S.A. ¶ 2.3. All other Settlement Class Members must submit a Claim Form and will be eligible to receive two (2) years of 1B credit monitoring and identity theft protection services, with a minimum of $1,000,000 in insurance coverage, through Equifax Identity Guard ("Equifax Identity Guard"). *Id.* Settlement Class Members will be able to activate the credit monitoring and identity theft protection services after the Effective Date. *Id.* Startek will pay for the credit monitoring and identity theft protection services separate and apart from other settlement benefits. *Id.*

This benefit of the settlement bears with it significant value. The Experian Identity Works product offered in response to the Data Incident is not offered at retail, but the comparable 1B retail product at retail is $17.99 per month.[3] Thus, the value of two years of this service is $431.76 per Settlement Class Member. During settlement negotiations, it was discovered that 192 Settlement Class Members signed up for Experian Identity Works. Since these 192 Settlement

---

[3] www.idnotify.com/select/ (last visited August 12, 2022).

Class Members will automatically receive an additional two (2) years of Experian Identity Works, the minimum value of this settlement benefit is $82,897.92, guaranteed. And that is if not a single additional class member signs up for the two (2) years of service being offered to them. If an extremely modest 2% of the remaining 24,627+ Settlement Class Members sign up for Equifax Identity Guard—which is not offered at retail, but the comparable 1B retail product is $17.99 per month,[4] the value of this benefit increases to $295,556.99 ($82,897.92+$212,659.07).

### 4. Security-Related Improvements

In addition to the foregoing settlement benefits, Startek agrees to implement and/or maintain certain security measures and enhancements implemented in response to the Data Incident through December 31, 2023, including taking the steps listed in Exhibit A to the Settlement Agreement (to be filed separately under seal). S.A. ¶ 2.4. These changes will benefit those members of the Settlement Class whose information remains in Startek's possession, as well as future employees of Startek.

### B. Class Notice and Settlement Administration

The parties have jointly selected the well-regarded and highly experienced settlement administration firm Atticus Administration, LLC ("Atticus") as the Claims Administrator. Atticus's qualifications are outlined in the Supporting Declaration of Christopher Longley, Esq. ("Atticus Decl.), attached hereto as Exhibit 3. Notice will be given to the Settlement Class via individual notice, which will be given primarily by mailing the Short Notice (attached to the Settlement Agreement at Exhibit B) by first-class mail to the postal addresses associated with the

---

[4] *Id.*

accounts of Settlement Class Members. Atticus Decl. ¶ 7. The notice program is described more fully in the Atticus Declaration and in Paragraph 3.2 of the Settlement Agreement and is the best notice practicable under the circumstances. *See* Atticus Decl. ¶ 14.

A Long Notice (attached to the Settlement Agreement as Exhibit C), and a copy of the Claim Form (attached to the Settlement Agreement as Exhibit D) will also be posted on a Settlement Website established by the Claims Administrator, along with other important documents, such as the Preliminary Approval Order, the Settlement Agreement, the Amended Complaint, and any other materials agreed upon by the Parties and/or required by the Court, such as the motions for final approval and for attorneys' fees and expenses. S.A. ¶ 3.2(c) & (e). The Claims Administrator also will provide copies of the Short Notice, Long Notice, and paper Claim Form, as well as the Settlement Agreement, upon request to Settlement Class Members. *Id*. ¶ 3.2(g). The notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). Furthermore, a toll-free help line shall be made available to provide Settlement Class Members with information relevant to this Settlement. S.A, ¶ 3.2(f).

The Claims Administrator has estimated that notice and administration costs will total approximately $51,016. Atticus Decl., Ex. B. Startek shall pay the entirety of contractually agreed upon and authorized costs of Claims Administration and the costs of providing notice to the Settlement Class in accordance with the Preliminary Approval Order. S.A. ¶¶ 2.6, 3.2. This is also a benefit to the Settlement Class.

C.   **Claims, Exclusions, and Objections**

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or

decide whether they would like to opt-out or object. Subject to Court approval, Settlement Class Members will have ninety (90) days from the date of the commencement of notice to Settlement Class Members to file a claim. *Id.* ¶ 3.2.

Similar to the timing of the claims process, the timing with regard to exclusions and objections is structured to give Settlement Class Members sufficient time to review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, to exclude or object themselves from the Settlement.

Settlement Class Members who seek to be excluded from the Settlement must sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator, as set forth in the Notices. *Id.* ¶ 4.1. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class. *Id.* The notice must be postmarked no later than sixty (60) days from the date of the commencement of notice. *Id.* All Persons who submit valid, timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of and/or be bound by the terms of the Settlement Agreement. *Id.* ¶ 4.2.

Any Settlement Class Member who wishes to object must submit a timely, written notice of his or her objection no later than sixty (60) days from the date of the commencement of notice (the "Objection Deadline"). *Id.* ¶ 5.1. Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any and all counsel representing the

objector in connection with the objection; (vi) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing, and; (vii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation). *Id.* The objection must be served concurrently therewith upon Class Counsel and counsel for Startek. *Id.*

##### D.    <u>Attorneys' Fees and Expenses</u>

Plaintiffs will also separately seek an award of attorneys' fees not to exceed $210,000, which includes reimbursement of their reasonable costs and litigation expenses incurred. As shown above, the value of the credit monitoring and identity theft protection services for the 192 Settlement Class Members who already signed up for the Experian Identity Works is $82,897.92, guaranteed. If only 2% of the remaining 24,627+ Settlement Class Members sign up for Equifax Identity Guard, the value of this benefit increases to $295,556.99 ($82,897.92+$212,659.07). And, if only an extremely modest 2% of the Settlement Class Members make claims for ordinary reimbursements of $500, that is another $248,190. In addition, if only a mere 1% of the Settlement Class Members make claims for extraordinary reimbursements of $4,500, that is another $1,116,855. These amounts in the aggregate total $1,743,449.91. The combined attorneys' fees, service awards, and costs in this case are $210,000, $5,000, and $383.75, respectively, which total $215,383.75. Thus, the attorneys' fees are approximately twelve (12) percent of the above-referenced settlement value provided to the Settlement Class. However, the value of this settlement is far more than that, even assessing it on an extremely conservative basis. Settlement Administration costs are estimated to be $51,016. Atticus Decl., Ex. B. And the attorneys' fees themselves are deemed a benefit to the Settlement Class as well.  The attorneys' fees and expenses will be well below 10% of the overall value of this settlement. Settlement Class Counsel's fee

request is well within the range of reasonableness for settlements of this nature and size. Startek has agreed to take no position with regard to the fees motion. S.A. ¶ 7.1.

### E.    Service Awards to Named Plaintiffs

Plaintiffs have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Lietz Decl., ¶ 30. Plaintiffs will separately petition the Court for awards of $2,500 each (for a total payment of $5,000) in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class. *See* S.A. ¶ 7.3. The amount requested here is presumptively reasonable and commonly awarded in settled class actions.

### F.    Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. ¶ 6.1. "Released Claims" are defined, i*nter alia*, as:

> any and all past, present, and future claims, causes of action, lawsuits, set-offs, costs, expenses, attorneys' fees, losses, rights, demands, charges, complaints, actions, suits, petitions, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, in law or equity, matured or unmatured, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Parties based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation.

S.A. ¶ 1.20. Released Claims shall include Unknown Claims as defined in ¶ 1.28 of the Settlement Agreement. Released Claims shall not include the right of any Settlement Class Member, Settlement Class Counsel, or any of the Released Persons to enforce the terms of the settlement

contained in the Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class. S.A. ¶ 1.20.

## IV.    LEGAL AUTHORITY

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class and certification of the class. *See* Fed. R. Civ. P.  23(e)(A)(B)(i)-(ii). The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions* §§ 11.22, 11.27 (3d ed. 1992) ("*Newberg*"); *In re Beef Indus. Antitrust Litig.,* 607 F.2d 167, 175 (5th Cir. 1979). "First, the court must preliminarily approve the settlement. Then, the members of the class must be given notice of the proposed settlement, and finally, after a hearing, the court must determine whether the proposed settlement is fair, reasonable, and adequate." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. Oct. 20, 1993); *see also Reiskin v. Reg'l Transp. Dist. Colo*, No. 14-CV-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (settlement may be finally approved when it is fair, reasonable, and adequate).

"The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc*., 41 F.Supp.3d 1003, 1007 (D. Colo. May 19, 2014) (citing *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1186 (10th Cir. 2002)). At this preliminary approval stage, the settling parties bear the burden of demonstrating that the settlement is fair, reasonable, and adequate. *See Manual for Complex Litigation* § 21.631 (4th ed. 2004); *In re Chinese-Manufactured Drywall Prod. Liab. Litig*., No. 11-CV-1363, 2012 WL 92498, at *7 (E.D. La. Jan. 10, 2012). The standards at preliminary approval are not as stringent as those applied to a motion for final approval. *See In re Pool Prods. Distrib. Mkt. Antitrust Litig.,* 310 F.R.D. 300, 314 (E.D. La. 2015) (citing *Karvaly v. eBay, Inc*., 245 F.R.D. 71, 86 (E.D.N.Y.

2007)). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. at 314-315.

Approval of a proposed settlement is within the sound discretion of the Court. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). "The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness." *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage." *Id.*; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing.")

Plaintiff here seeks preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed. 2004). Tenth Circuit public and judicial policies favor settlement of complex class action litigation. *See, e.g., N.E. Health Care Emp. Pension Fund v. Woodruff*, 520 F.3d 1255, 1258 (10th Cir. 2008) ("'Public policy strongly favor[s] the pretrial settlement of class action lawsuits.'"). Compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties, "and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997); *Williams v. First Nat. Bank*, 216 U.S. 582 595, 30 S.Ct. 441, 54 L.Ed. 625

(1910). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

"The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citation omitted). Because the Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiff's motion and allow notice to be provided to the class. *See* 2 Newberg & Conte, *Newberg on Class Actions* § 11.25 (3d ed. 1992).

## V.     LEGAL DISCUSSION
### A.     <u>The Court Should Certify the Proposed Class for Settlement Purposes</u>

Plaintiffs seek certification, for settlement purposes only, of a class consisting of approximately 24,819 individuals who were sent notice of the Data Incident on or about January 21, 2022 by Startek. S.A. ¶ 1.23; Lietz Decl., ¶¶ 14, 31. The *Manual for Complex Litigation* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

Under Rule 23, a class action may be maintained where the movants demonstrate: (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (citing Fed. R. Civ. P. 23(a)). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.  23(b)(3).

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data security incident cases have been certified – on a *national* basis. *See, e.g, In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 2022 WL 1396522, at *1 (D. Md. May 3, 2022); *In re Equifax Inc. Cust. Data Sec. Breach Litig.*, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) (slip copy); *In re Target Cust. Data Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case is no different.

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas*, 234 F.R.D. at 693. In any event, while a complete fairness evaluation is unnecessary at this early juncture, Plaintiffs' and their counsel strongly believe that the resolution reached here is in the Settlement Class's best interests.

### 1. The Settlement Class is so Numerous that Joinder is Impracticable

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978) (citing *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763 (8th Cir. 1971)); *see, e.g., Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976) (358 class members were found to be a viable class). Here, the Settlement Class clearly surpasses the threshold required to establish numerosity. As the proposed Settlement Class includes approximately 24,819 individuals whose PII may have been impacted by the Data Incident. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2. Questions of Law and Fact are Common to the Settlement Class

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *See DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The threshold for meeting this prong is not high— the requirement is satisfied where the plaintiff asserts claims that "raise a common contention" that is of such a nature that it is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *Soseeah v. Sentry Ins.*, No. CIV 12-01091 RB/KK, 2016 WL 7435792, at *4 (D. N.M. Sept. 6, 2016) (citing *Dukes,* 564 U.S. at 350)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Startek failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members is a question common across the entire class. Startek's data security safeguards are common across the Settlement Class, and those applied to the data of one Class Member do not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Startek failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;
- Whether Startek's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and
- Whether Startek's conduct rose to the level of negligence.

These common questions, and others, alleged by Plaintiffs in their Amended Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

3. <u>Plaintiffs' Claims and Defenses are Typical of the Settlement Class Members</u>

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole."

19

Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (quoting *Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011)). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3), so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id.* (quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988)).

Here, Plaintiffs' and Settlement Class Members' allegations all stem from the same event—2021 Data Incident—and the cybersecurity protocols that Startek had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

### 4.  Plaintiffs and Their Counsel will Provide Fair and Adequate Representation for the Settlement Class

Representative plaintiffs must be able to provide fair and adequate representation for the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego*, 313 F.R.D. at 126 (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010)). To satisfy the adequacy of representation requirement, a plaintiff must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *See Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries allegedly arising out of the same Data Incident. Plaintiffs' and Settlement Class

Members' data was all allegedly impacted as a result of the Data Incident in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for the same monetary compensation, the same credit monitoring and identity theft protection services, and the same security-related improvements.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators—with a particular emphasis in cybersecurity incident litigation—and are well suited to advocate on behalf of the class. *See* Lietz Dec. ¶¶ 2-12. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, all the requirements of Rule 23(a) are satisfied.

     5.  <u>Certification is Appropriate Because Common Issues Predominate Over Individualized Ones, and Class Treatment is Superior</u>

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

*First*, in order to predominate, the Court must "find[] that questions of law or fact common to class members predominate over any questions affecting only individual members." *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655 (W.D. Okl. 2012) (citing *In re Ribozyme Pharma., Inc. Sec. Litig.*, 205 F.R.D. 572, 578 (D. Colo. 2001) (quoting Fed. R. Civ. P. 23(b)(3)). In this case, key predominating questions are whether Startek had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class, and whether Startek breached that duty. The common questions that arise from Startek's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any

individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case, despite variations in state laws at issue; concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case; stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No.: 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

*Second*, the resolution of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating thousands of individual data incident cases arising out of the *same* Data Incident. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773

F.3d 1076, 1096 (10th Cir. 2014). The common questions of fact and law that arise from Startek's conduct predominate over any individualized issues, and a class action is the superior vehicle by which to resolve these issues, and, as such, the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

## B.    The Settlement Terms are Fair, Adequate, and Reasonable

In evaluating a proposed settlement under Rule 23(e)(2), the trial court must determine whether the settlement is fundamentally fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is committed to the sound discretion of the Court. *See Jones v. Nuclear Pharmacy, Inc.* 741 F.2d 322, 324 (10th Cir. 1984). The Tenth Circuit "will not set aside a class action settlement unless the trial court has abused its discretion." *Miller v. Woodmoor Corp.*, 619 F.2d 65, 66 (10th Cir. 1980).

In determining whether a class action settlement is fair, reasonable, and adequate, the trial court should consider the four factors set forth in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984):

(1) Whether the proposed settlement was fairly and honestly negotiated;

(2) Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) The judgment of the parties that the settlement is fair and reasonable.

*Jones*, 741 F.2d at 324; *see Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002) (same); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976) (same); *Martinez v. Reams*, No. 20-cv-00977-PAB-SKC, 2021 WL 603054, at *4 (D. Colo. Feb. 16, 2021)

(slip copy) (same). "If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable." *Martinez*, 2021 WL 603054, at *4 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3rd Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected)).

A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, because the Settlement Agreement is fair, reasonable, and adequate under the Rule 23 criteria and the *Jones* factors, this Court should grant preliminary approval and allow notice to issue to the class.

### 1. Whether the Proposed Settlement Was Fairly and Honestly Negotiated

The negotiations in this matter occurred at arm's length. Lietz Decl., ¶¶ 22-23, 25. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

In this case, since Plaintiffs filed the Amended Complaint, the Parties have been engaged in numerous settlement discussions and have exchanged information regarding the Data Incident. *Id.* ¶ 24. After extensive discussion and protracted arms'-length negotiations, and an informal exchange of information, including information regarding the size of the class, the Parties were able to reach an agreement on all the principal terms of settlement for this matter, subject to final

mutual agreement on all necessary documentation. *Id.* ¶ 25. In the months following the execution of Proposed Settlement Terms, the Parties continued to negotiate the finer points of the Settlement Agreement and accompanying notice documents. *Id.* ¶ 26. Plaintiffs strongly believe the settlement is favorable to the Settlement Class. *Id.* ¶ 30. The Parties have reached a settlement that is fair, adequate, and reasonable and free of collusion and should be preliminary approved.

2.  Whether Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

Plaintiffs believe they have built a strong case for liability. With respect to Plaintiffs' negligence claim, Plaintiffs believe they will ultimately be able to offer evidence that Startek was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Settlement Class's PII. Lietz Decl., ¶ 28.

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Startek's data security was inadequate and that, if they establish that central fact, Startek is likely to be found liable under at least some of the liability theories and common law Plaintiffs pled in their Amended Complaint.  While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that Startek asserts a number of potentially case-dispositive defenses. In fact, should litigation continue,

Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data incident cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met— and one that been denied in other cybersecurity incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses Startek asserts—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

3.    <u>Whether the Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation</u>

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 24,819 individuals (each of whom may need to establish cognizable harm and causation), a complicated and technical factual background, and a defendant that has already provided some relief to its potentially affected employees (in the form of complimentary credit monitoring and identity theft protection services). Startek will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further protracted, expensive litigation.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class action. Cybersecurity incident litigation is lengthy, complex, and difficult, and the rapid evolution of case law in this area of the law makes outcomes uncertain. At present, cybersecurity incident cases are among the riskiest and indefinite of all class action

26

litigation, making the expense of the litigation high and the settlement of these cases the more sensible course of action, if the parties are able to reach a settlement. *See Gordon*, 2019 WL 6972701, at *1. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part by* 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution, *i.e., the s*ettlement in the same *In re OPM* litigation was just announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis in a data security incident case is rife with uncertainty. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

While early settlement has allowed costs to stay modest, and the Settlement Agreement provides for costs to be paid for separate and apart from the funds available to the class—protracted litigation would only serve to increase costs and have a potentially negative affect on class recovery, which itself is far from certain. Continued litigation would also increase the burden on

the Court, without any guaranteed benefit to Plaintiff or the Settlement Class Members. "Complex litigation … 'can occupy a court's docket for years on end, deplete the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR-AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) (citing *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992)).

Here, the Settlement provides immediate recovery in the form of up to $500 for reimbursement for documented ordinary out-of-pocket expenses, fees for documented credit reports, credit monitoring, or other identity theft insurance product, and up to four (4) hours of lost time, as well as reimbursement for up to $4,500 of extraordinary losses. If Settlement Class Members submit claims for a modest 2% of the reimbursement for ordinary expenses (documented ordinary out-of-pocket expenses and documented fees for credit reports, credit monitoring, or other identity theft insurance products) and lost time, all subject to the up to the $500 cap, the settlement value is $248,190. And, if Settlement Class Members submit claims for a mere 1% of reimbursement for extraordinary losses, the settlement value is $1,116,855. In addition, the 192 Settlement Class Members who previously claimed Experian Identity Works will automatically receive an additional two (2) years of these services, without the need to make an affirmative claim. The remaining 24,627+ Settlement Class Members may make claims for two (2) years Equifax Identity Guard. As noted above, for the 192 Settlement Class Members who previously signed up for Experian Identity Works, the minimum value of this settlement benefit is $82,897.92, guaranteed.  And that is if not a single additional Settlement Class Member signs up for the two (2) years of services being offered to them. And, if an extremely modest 2% of the remaining 24,627+ class members sign up for the Equifax Identity Guard, the value of this benefit increases to $295,556.99 ($82,897.92+$212,659.07). Moreover, Startek will provide confidential, discrete,

and tailored confirmatory discovery concerning the Data Incident and security measures and enhancements implemented in response to the Data Incident through December 31, 2023, under seal with this Court. These security measures and enhancements will benefit former and current Startek employees. The overall value of the Settlement is substantial and provides immediate recovery to the Settlement Class Members that far outweighs the mere possibility of future relief after protracted, expensive litigation in this case, especially given the inherent risks associated with data breach litigation.

4.    The Judgment of the Parties that the Settlement is Fair and Reasonable

The judgment of experienced Plaintiffs' counsel and the Parties also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data incident litigation, and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are more than fair and reasonable in light of reported average reimbursable expenses, including ordinary out-of-pocket expenses, fees for credit reports, credit monitoring, or other identity theft insurance product, and reimbursement for lost time, incurred due to a data incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiff's counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits

provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts in the cases cited above. Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement.

In addition, Plaintiffs support the Settlement. Lietz Decl., ¶ 30. Plaintiffs also intend to apply for Service Awards. These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Service Awards to the named Plaintiffs are appropriate here, given the efforts and participation of Plaintiffs in the litigation, and do not constitute preferential treatment, particularly where any Settlement Class Member may claim more in compensation than the amount of the proposed Service Awards. The named Plaintiffs were not promised a Service Award, nor did they condition their representation on the expectation of a Service Award. Lietz Decl., at ¶ 66.

Under all the *Jones* factors, this proposed settlement is fair, reasonable, and adequate, and due to be preliminarily approved.

## C.    The Proposed Settlement Administrator Will Provide Adequate Notice

Rule 23(c)(2)(B) requires the Court to "direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the *Manual for Complex Litigation*. *See* S.A. at Ex.2; *see generally* Atticus Decl, ¶ 14. Here, the Settlement provides for direct and individual notice, to be sent via first class mail to each Settlement Class Member. Lietz Decl., ¶ 49. Not only has Startek agreed to provide Settlement Class Members with individualized notice via first-class mail through the proposed Claims Administrator, but all versions of the settlement notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 50. The Settlement Administrator will also make a post office box and toll-free telephone number available by which Settlement Class members can make claims and seek answers to questions about the Settlement. *Id.* ¶ 52.

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* S.A. at Ex. 2.

The first-class mail Notice proposed here is the gold standard and is consistent with Notice programs approved by other courts. *See Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first-class mail); *Billittri v. Sec. Am., Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises

Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court.

### D.    **Appointment of the Claims Administrator**

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request that the Court appoint Atticus to serve as the Claims Administrator. Atticus has a trusted and proven track record of supporting thousands of class action administrations, with vast legal administration experience. *See generally* Atticus Decl., Ex. 3. Notice and administration are expected to cost approximately $51,016 and will be paid by Startek separate and apart from the relief to the Class. *Id.* at ¶ 12, Ex. B.

### E.    **Appointment of Settlement Class Counsel**

Plaintiffs also request appointment of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") as Settlement Class Counsel. Proposed Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Lietz Decl., ¶¶ 2-12 and attached firm resume. Accordingly, the Court should appoint Milberg and Attorneys David K. Lietz and Gary M. Klinger as Settlement Class Counsel.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of monetary payments and identity theft protections. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: August 16, 2022                    Respectfully submitted,

                                          /s/ *David K. Lietz*

                                          David K. Lietz
                                          **MILBERG COLEMAN BRYSON
                                          PHILLIPS GROSSMAN, PLLC**
                                          5335 Wisconsin Avenue NW, Suite 440
                                          Washington, D.C. 20015-2052
                                          Telephone: (866) 252-0878
                                          Facsimile: (202) 686-2877
                                          Email: dlietz@milberg.com

                                          **MILBERG COLEMAN BRYSON
                                          PHILLIPS GROSSMAN, PLLC**
                                          Gary M. Klinger
                                          227 Monroe Street, Suite 2100
                                          Chicago, IL 60606
                                          Phone: 866.252.0878
                                          Email: gklinger@milberg.com

                                          *Attorneys for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, David K. Lietz, hereby certify that a copy of this Unopposed Motion for Preliminary Approval of Class Action Settlement was sent to counsel of record via the federal court's e-filing system.

Dated: August 16, 2022                    By: *<u>/s/ David K. Lietz</u>*
                                               David K. Lietz