# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

RYAN HAWKINS and TAMARA )
KIRTLEY, individually and on behalf all )
others similarly situated, )
                                )    **CASE NO. 1:22-cv-00258-RMR-NRN**
       Plaintiffs, )
                                )    **CLASS ACTION**
v. )
                                )    **JURY TRIAL DEMANDED**
STARTEK, INC. )
)
       Defendant. )
)

---

### <u>DECLARATION OF DAVID K. LIETZ IN SUPPORT OF<br>PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF<br>CLASS ACTION SETTLEMENT</u>

I, David K. Lietz, being competent to testify, make the following declaration:

1.      I am currently a partner of the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). I am one of the two lead attorneys for Plaintiffs and seek appointment as Settlement Class Counsel[1] for the proposed Settlement Class. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so. A true and correct copy of the Settlement Agreement ("Agreement" or "S.A.") is attached to the Motion for Preliminary Approval as **Exhibit 2**. Included with the Agreement are the following sub-exhibits:

        **Exhibit A:**    **Confirmatory Discovery re: Security Related Measures (to be filed under seal)**

        **Exhibit B:**    **Short Notice**

---

[1] The capitalized terms used in this Declaration shall have the same meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

**Exhibit C:**   **Long Notice**

**Exhibit D:**   **Claim Form**

**Exhibit E:**   **[Proposed] Preliminary Approval Order**

**Counsel Qualifications**

2.     I have extensive experience in class action litigation generally and data breach class action litigation in particular. My experience, and that of my colleague and law partner, Gary M. Klinger, is described below.

3.     I have been licensed to practice law in the District of Columbia since 1991, and I am a member of the bars of numerous federal district and appellate courts. I have decades of litigation and class action experience, and I have been admitted to practice *pro hac vice* in this matter.

4.     I have represented and are currently representing plaintiffs in more than 100 class action lawsuits in state and federal courts throughout the United States. Both I, my law partner, Gary M. Klinger, and my firm carry on a national and international class action law practice. With respect to data privacy cases, I am currently litigating more than seventy-five cases across the country involving violations of the privacy violations, data breaches, and ransomware attacks.

5.     While Milberg partners (including me and my law partner) have decades of class action experience, it is noteworthy that in the past two years since March 14, 2020, I and Mr. Klinger have been appointed class counsel in a number of data breach or data privacy cases, including:

   a.   *Kenney et al. v. Centerstone of America, Inc*., Case No. 3:20-cv-01007 (M.D. Tenn.) (appointed co-class counsel in data breach class action settlement involving over 63,000 class members; final approval granted August 2021);

b.  *Baksh v. Ivy Rehab Network, Inc.*, Case No. 7:20-cv-01845-CS (S.D.N.Y.) (class counsel in a data breach class action settlement; final approval granted Feb. 2021);

c.  *Mowery et al. v. Saint Francis Healthcare System*, Case No. 1:20-cv-00013-SRC (E.D. Mo.) (appointed class counsel; final approval granted Dec. 2020);

d.  *Chatelain et al. v. C, L and W PLLC d/b/a Affordacare Urgent Care Clinics*, Case No. 50742-A (42nd District Court for Taylor County, Texas) (appointed class counsel; settlement valued at over $7 million; final approval granted Feb. 2021);

e.  *Jackson-Battle v. Navicent Health, Inc.,* Civil Action No. 2020-CV-072287 (Superior Court of Bibb County, Georgia) (appointed class counsel in data breach case involving 360,000 patients; final approval granted Aug. 2021);

f.  *Bailey v. Grays Harbor County Public Hospital District et al.*, Case No. 20-2-00217-14 (Grays Harbor County Superior Court, State of Washington) (appointed class counsel in hospital data breach class action involving approximately 88,000 people; final approval granted Sept. 2020);

g.  *Chacon v. Nebraska Medicine*, Case No. 8:21-cv-00070-RFR-CRZ (D. Neb.) (appointed class counsel in data breach settlement, final approval granted September 2021);

h.  *Richardson v. Overlake Hospital Medical Center et al.*, Case No. 20-2-07460-8 SEA (King County Superior Court, State of Washington) (appointed class counsel in data breach case, final approval granted September 2021);

i.  *Martinez et al. v. NCH Healthcare System, Inc.*, Case No. 2020-CA-000996 (Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida) (Mr. Lietz appointed Settlement Class Counsel; final approval granted);

j.  *Carr et al. v. Beaumont Health et al.*, Case No. 2020-181002-NZ (Circuit Court for the County of Oakland, Michigan) (Mr. Lietz appointed co-class counsel in data breach case involving 112,000 people; final approval granted October 2021);

k.  *Klemm et al. v. Maryland Health Enterprises Inc.*, Case No. C-03-CV-20-022899 (Circuit Court for Baltimore County, Maryland) (appointed class counsel; final approval granted November 2021);

l.  *Cece et al. v. St. Mary's Health Care System, Inc. et al.*, Civil Action No. SU20CV0500 (Superior Court of Athens-Clarke County, Georgia) (appointed Settlement Class Counsel in data breach case involving 55,652 people; final approval granted April 2022);

m.  *Powers, Sanger et al v. Filters Fast LLC*, Case 3:20-cv-00982-jdp (appointed co-lead Settlement Class Counsel; preliminary approval granted November 2021);

n.  *Garcia v. Home Medical Equipment Specialists, LLC*, Case No. D-202-cv-2021-06846 (appointed class counsel; preliminary approval granted June 2022);

o.  *Baldwin et al. v. National Western life Insurance Company*, Case No. 2:21-cv-04066 (W.D. Mo.) (appointed co-class counsel; final approval granted June 2022);

p.  *Hashemi, et. al. v. Bosley, Inc*., Case No. 21-cv-00946-PSG (RAOx) (C.D. CA) (appointed co-class counsel; preliminary approval granted February 2022);

q.  *Paras et al. v. Dental Care Alliance*, Civil Action No. 22EV000181 (State Court of Fulton County, Georgia (appointed co-class counsel; preliminary approval granted April 2022);

r.  *James v. CohnReznick LLP*, Case No. 1:21-cv-06544 (S.D.N.Y.), (appointed as co-class counsel; preliminary approval granted May 2022);

s.  *Purvis, et al v. Aveanna Healthcare, LLC*, Case No. 1:20-cv-02277-LMM (N.D. Ga.) (appointed class counsel; preliminary approval granted June 2022);

t.  *Kolar v. CSI Financial Services LLC dba ClearBalance*, Case No. 37-2021-00030426-CU-NP-CTL (Superior Court of San Diego County, California) (appointed co-lead class counsel, preliminary approval granted June 2022);

u.  *In re: GE/CBPS Data Breach Litigation*, 1:2020-cv-02903, Doc. 35 (S.D.N.Y.) (appointed co-lead counsel in nationwide class action);

v.  *Nelson, et al. v. Idaho Central Credit Union*, No. CV03-20-00831 (Bannock County, Idaho) (appointed co-lead counsel in data breach class action involving 17,000 class members; granted final approval of settlement valued at $3.3 million);

w.  *In Re: Canon U.S.A. Data Breach Litigation*, Master File No. 1:20-cv-06239-AMD-SJB (E.D.N.Y.) (appointed co-lead counsel);

x.  *Suren et al. v. DSV Solutions, LLC*, Case No. 2021CH000037 (Circuit Court for the Eighteenth Judicial Circuit of DuPage County, Illinois) (appointed Settlement Class Counsel, final approval granted September 27, 2021);

y.  *Aguallo et al v. Kemper Corporation et al.,* Case No. 1:21-cv-01883 (N.D. Ill.) (appointed Co-lead Counsel, final approval granted of $17.1 million class settlement);

z.  *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.) (appointed co-lead counsel in data breach involving over 1 million persons; preliminary approval of $4.35 million settlement granted January 2022);

aa.  *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.) (appointed co- lead counsel in data breach case involving over 2.4 million class members; preliminary approval of $4.75 million settlement granted February 2022);

bb.  *In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.) (appointed co- lead counsel in data breach case involving over 3 million class members);

cc.  *Heath v. Insurance Technologies Corp.*, No. 21-cv-01444 (N.D. Tex.) ($11 million settlement for a major data breach involving more than 4 million consumers).

dd.  *Hough v. Navistar, Inc.,* Case No.: 2021L001161 (Circuit Court for the Eighteenth Judicial Circuit, Dupage County, Illinois); (appointed co-lead class counsel; final approval granted May 2022);

ee.  *Clark v. Mercy Hospital, et al*, Case No. CVCV082275 (Iowa Dist. Crt, Johnson Cnty.) (appointed class counsel; preliminary approval granted February 2022);

ff.  *Myschka, et al v. Wolfe Clinic, P.C. d/b/a Wolfe Eye Clinic*, (Iowa Dist. Crt., Marshall Cnty.) (appointed class counsel; final approval granted June 2022);

gg.  *Devine, et al v. Health Aid of Ohio, Inc.*, (Ohio Court of Common Pleas, Cuyahoga Cnty.) (appointed class counsel; preliminary approval granted March 2022);

hh.  *Davidson v. Healthgrades Operating Company, Inc.*, Case No. 1:21-cv-01250-RBJ (D. Colo.), (appointed class counsel; preliminary approval granted April 2022);

ii.  *Bodie v. Capitol Wholesale Meats, Inc.,* Case No. 2022CH000020 (Ill. 18th Jud. Cir. Crt., DuPage Cnty.) (appointed class counsel; preliminary approval granted March 2022);

jj.  *Culp v. Bella Elevator LLC*, Case No. 2021-CH-00014 (Ill. 10th Jud. Cir. Crt., Peoria Cnty.) (appointed class counsel; final approval granted May 2022), and;

      kk. *Snyder v. Urology Center of Colorado, P.C.*, Case No. 2021CV33707 (2nd District Court, Denver County, Colorado) (appointed settlement class counsel; preliminary approval granted July 2022).

6.      I am also lead counsel on the following cases that are on the cutting edge of Article III federal court jurisdiction in data breach litigation—*Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360 (N.D. Ga. 2021); *Charlie v. Rehoboth McKinley Christian Healthcare Services*, Civ. No. 21-652 SCY/KK, 2022 WL 1078553 (D.N.M. April 11, 2022); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *1 (W.D. Mo. Sept. 15, 2021) and *McCreary v. Filters Fast LLC*, No. 3:20-CV-595-FDW-DCK, 2021 WL 3044228 (W.D.N.C. July 19, 2021).

7.      I have been appointed as class counsel in other consumer class action cases and have tried consumer class action cases to verdict before a jury, most recently in *Baez v. LTD Financial Services*, Case No: 6:15–cv–1043–Orl–40TBS (MD Fla.).

8.      My experience with class actions also includes a leadership role in a Massachusetts WalMart wage abuse class action, national HMO litigation, the Buspirone MDL, and Louisiana Norplant litigation.

9.      In addition to my class action experience, I have substantial appellate experience, successfully briefing and arguing multiple cases before a number of federal appellate courts, including *Home Depot v. Jackson* at the U.S. Court of Appeals for the Fourth Circuit, and I served as part of the successful brief-writing and oral advocacy team for *Home Depot v. Jackson*, 139 S. Ct. 1743, 1744, 204 L. Ed. 2d 34 (2019) at the United States Supreme Court.

10.      Prior to concentrating my practice on consumer class action litigation, I litigated critical injury and wrongful death actions arising from commercial incidents, such as tractor trailer

incidents, industrial explosions, a subway collision, and commercial airplane crashes. A

representative list of my critical injury and wrongful death cases include:

- Represented the family of the deceased conductor of the Washington Metropolitan Area Transit Authority subway train that collided with another Metro train in 2009.
- Represented the family of a fatality victim of the 2006 Greyhound bus crash near Elizabethtown, New York.
- Represented six victims (four deceased, two injured) of a massive fog-related pileup on the Pennsylvania Turnpike in 2003.
- Represented three victims (two deceased, one injured) of the 2002 Interstate 40 Bridge Collapse, where a tugboat and barge hit an interstate highway bridge near Webbers Falls, Oklahoma and caused several vehicles to plunge into the Arkansas River.
- Represented the family of one victim of the 2000 Alaska Airlines Flight 261 crash, where an MD-83 with a cracked jackscrew nosedived into the water off Point Mugu, California.
- Represented the victims (one deceased, one critically injured) of a 2000 incident where a tractor trailer rear ended a line of stopped traffic near Hopkinsville, Kentucky.
- Represented a critically burned victim of the 1998 explosion at the State Line Energy plant in Hammond, Indiana, where a massive coal dust explosion ripped through the power plant, causing power shortages all over the city of Chicago, Illinois.
- Represented the families of four victims of the 1996 Valujet Flight 592 crash, where a DC-9 developed a cargo hold fire and crashed into the Everglades near Miami, Florida.
- Represented the family of a victim of a 1994 crane collapse in Laughlin, Nevada, when a mobile truck crane toppled across the parking lot of a casino.

11.    I negotiated several million+ dollar settlements, served as lead counsel in multiple

civil actions, tried a number of cases to verdict in both jury and bench trials, and argued cases

before federal district and appeals courts and numerous state courts. I have lifetime verdicts and

settlements in excess of $100 million, and I have consistently achieved settlements in the highest

quartile of tort and mass tort cases. I have litigated against some of the largest transportation-

related companies in the US, including Greyhound, Goodyear, Cessna, Textron, and the

Washington Metropolitan Area Transit Authority (WMATA).

12.    A summary firm resume for my law firm Milberg is attached hereto as **Exhibit A.**

**Initial Investigation and Communications**

13.      This class action arises out of a June 26, 2021 cyberattack and data breach ("Data Incident") involving Defendant Startek, Inc. ("Startek").

14.      Plaintiffs allege in their complaint that as a result of the Data Incident, Plaintiffs and Settlement Class Members suffered ascertainable losses in the form of identity theft and fraud, the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack. The number of Settlement Class Members is approximately 24,819, including Plaintiffs.

15.      Plaintiffs further allege that their and Settlement Class Members' sensitive personal information—which was entrusted to Startek—was compromised and unlawfully accessed due to the Data Incident. Information compromised in the Data Incident involves personally identifiable information ("PII") of Plaintiffs and Settlement Class Members, including names, dates of birth, and Social Security numbers that Startek collected and maintained for its current and former employees (collectively the "Private Information").

16.      After receiving notice that their PII had been impacted by the Data Incident, Plaintiffs Hawkins and Kirtley retained my firm.

17.      I, Mr. Klinger, and our team vigorously and aggressively gathered all of the information that was available regarding Startek and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to Startek's current and former employees. After an initial investigation, I, along with Mr. Klinger, and other members of our team at our firm filed a complaint on behalf of Plaintiffs Hawkins and Kirtley.

18.     The initial investigation into the facts and circumstances of this Data Incident revealed that the cyberattack against Startek likely involved some of its current and former employees' Private Information that was contained in Startek's computer network.

**Procedural Posture**

19.     On January 28, 2022, Plaintiffs filed a putative class action case against Startek in the United States District Court, District of Colorado, *Hawkins, et al. v. Startek, Inc.*, Case No. 1:22-cv-00258. ECF 1. On April 13, 2022, Plaintiffs filed an Amended Class Action Complaint ("the Amended Complaint" or "A.C.") alleging claims for: (1) negligence; (2) breach of implied contract; (3) unjust enrichment; (4) negligence *per se*; and (3) invasion of privacy by intrusion (the "Litigation"). A.C. ¶¶ 115-180; ECF 14. On April 27, 2022, Startek filed a Motion to Dismiss the Amended Complaint. ECF 15. The Parties have since fully briefed the Motion to Dismiss the Amended Complaint. ECF 26, 32.

20.     Based on the Parties' arms'-length settlement negotiations and an informal exchange of information, including information about the size of the class, on June 10, 2022, the Parties filed a Joint Notice of Settlement and Motion for Stay of Case Management Deadlines the "Joint Notice"), notifying the Court that the Parties reached an agreement in principle to a class-wide settlement of the Litigation. ECF 33. To finalize the terms of the Settlement Agreement and to facilitate the filing the motion for preliminary approval of class action settlement, the Joint Notice moved the Court to stay all current case management deadlines and to enter an order allowing Plaintiffs to file their motion for preliminary approval of class action settlement no later than August 9, 2022. *Id.* The Parties further moved the Court to hold the currently pending and fully briefed motion to dismiss in abeyance, pending Court approval of the proposed settlement. *Id.*

21.    Over the next several weeks, the Parties diligently drafted and negotiated the finer points of the settlement agreement, and the Settlement Agreement, accompanying notice forms, and claim form were finalized, and the Parties agreed upon a claims administrator.

### The Class Settlement

*History of Negotiations*

22.    The settlement came about as the result of protracted arm's-length negotiations.

23.    The Parties negotiated back and forth via e-mail and telephone calls. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both Parties forcefully advocating the position of their respective clients.

24.    During the negotiations, the Parties informally exchanged significant non-public information concerning the Data Incident and the size of the Settlement Class. Notably, Defendant confidentially shared considerable information about the post-incident investigation into the facts and circumstances of the Data Incident.

25.    The arm's-length negotiations were ultimately successful, and the Parties memorialized a putative settlement agreement in a term sheet.

26.    In the months following the execution of the term sheet, the Parties continued to negotiate the finer points of the agreement and draft the Settlement Agreement and accompanying notice documents.

27.    The Settlement Agreement and various exhibits were finalized and signed in August 2022 and are attached to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement as Exhibit 2.

28.    I, Mr. Klinger, and Plaintiffs believe that the claims asserted in this case have merit. With respect to Plaintiffs' negligence claim, Plaintiffs believe they will ultimately be able to offer

evidence that Startek was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Settlement Class Member's Private Information. I acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Startek through motion practice, trial, and potential appeals. I have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

29.    It is my belief, based on my extensive experience generally and my investigation and research into this case in particular, that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. The collective experience of me, Mr. Klinger, and our colleagues with experience on similar types of privacy and data protection practices provided substantive knowledge on the subject to enable us to represent Plaintiffs' and Settlement Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area or engaging in formal discovery.

30.    Plaintiffs have been personally involved in the case and support the Settlement. Plaintiffs strongly believe the settlement is favorable to the Settlement Class.

***Settlement Benefits***

31.    The Settlement provides benefits for the individuals covered by the operative complaint, consisting of "[a]ll persons to whom Startek sent a notice of the Data Incident on or about January 21, 2022," which consists of approximately 24,819 current and former Startek employees.

32.    The Settlement negotiated on behalf of the Settlement Class provides for two separate forms of monetary relief: (1) reimbursement of ordinary expenses in the form of documented ordinary out-of-pocket expenses, documented fees for credit reports, credit

monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the end of the Claims Deadline incurred as a result of the Data Incident, and lost time, all of which are subject to the same $500 cap per Settlement Class Member; and (2) reimbursement of documented extraordinary expenses up to $4,500 per Settlement Class Member. S.A. ¶¶ 2.1-2.3, 2.1.4.

33.    The first category of monetary relief payments is designed to provide reimbursement for ordinary expense payments designed to provide reimbursement for documented ordinary out-of-pocket expenses incurred as a result of the Data Incident. S.A. ¶ 2.1.1. Ordinary out-of-pocket expense reimbursements can be claimed at up to $500 per Settlement Class Member. *Id.* Reimbursable ordinary out-of-pocket expenses include: (i) unreimbursed bank fees; (ii) long distance phone charges; (iii) cell phone charges (only if charged by the minute); (iv) data charges (only if charged based on the amount of data used); (v) postage; or (vi) gasoline for local travel. *Id.* To receive reimbursement for any of the above-referenced ordinary out-of-pocket expenses, Settlement Class Members must submit a Valid Claim, including necessary supporting documentation, to the Claims Administrator. *Id*. In submitting a Claim Form, a Settlement Class Member also must affirm under the laws of the United States that information and documents submitted are true and correct.

34.    The next category of ordinary expense payments is designed to provide reimbursement for documented fees incurred for credit reports, credit monitoring, or other identity theft insurance products purchased between June 26, 2021 through and including the end of the Claims Deadline incurred as a result of the Data Incident. S.A. ¶ 2.1.2. To receive reimbursement for fees incurred for credit reports, credit monitoring, or other identity theft insurance products purchased between June 26, 2021 through and including the end of the Claims Deadline incurred

as a result of the Data Incident, Settlement Class Members must submit a Valid Claim, including necessary supporting documentation, to the Claims Administrator. *Id*. In submitting a Claim Form, a Settlement Class Member also must affirm under the laws of the United States that information and documents submitted are true and correct. *Id.*

35.     The final category of ordinary expense payments is designed to provide reimbursements for up to four (4) hours of lost time spent dealing with any effects of the Data Incident, compensated at $15 per hour, if at least one (1) full hour was spent addressing the Data Incident. S.A. ¶ 2.1.3. To receive reimbursement for up to four (4) of hours of lost time, Settlement Class Members need merely attest that the time was spent responding to issues raised by the Data Incident. *Id*. Settlement Class Members must provide a brief description of the activity/activities engaged in to address the Data Incident and an approximation of the time spent on each activity.. *Id*. Claims made for lost time can be combined with reimbursement for the above-referenced documented ordinary out-of-pocket expenses incurred as a result of the Data Incident and/or documented fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the Claims Deadline incurred as a result of the Data Incident and are subject to the same $500.00 cap for all Settlement Class Members. *Id.*

36.     The second category of monetary relief payments provides for reimbursement of documented extraordinary expenses, up to $4,500 per Settlement Class Member. *Id.* ¶ 2.1.4. To be eligible for reimbursement of documented extraordinary expenses, the loss must: (i) be an actual, documented, and unreimbursed, with documented proof of loss to be submitted with the claim; (ii) be more likely than not caused by the Data Incident; (iii) have occurred between June 26, 2021 through and including the end of Claims Deadline; and (iv) not already be covered by one or more of the above-referenced reimbursed expenses, and the Settlement Class Member must have made

reasonable efforts to avoid, or seek reimbursement for, such extraordinary losses, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.*

37.    Startek's maximum payment obligation discussed in the above monetary expense reimbursement benefits—both ordinary and extraordinary—of the Settlement in described more fully paragraphs 33 through 36 is $475,000. If approved claims for documented ordinary out-of-pocket expenses, documented fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the Claims Deadline incurred as a result of the Data Incident, lost time, and documented extraordinary expenses exceed the maximum payment obligation, the Claims Administrator shall modify the monetary proceeds to be distributed to affected Settlement Class Members on a pro rata basis.

38.    In addition to the potential monetary benefits, Plaintiffs also negotiated for significant additional credit monitoring and identity theft protection services for the Settlement Class. Settlement Class Members who previously claimed the Experian 12-month credit monitoring and identity theft protection services, with one bureau ("1B") credit monitoring services and $1 million identity theft protection ("Experian Identity Works"), which was offered by Startek in the Data Incident response, will automatically receive two (2) additional years of the same services without the need to file an affirmative claim. S.A. ¶ 2.3. All other Settlement Class Members must submit a Claim Form and will be eligible to receive two (2) years of 1B credit monitoring and identity theft protection services, with a minimum of $1,000,000 in insurance coverage, through Equifax ("Equifax Identity Guard"). *Id.* Settlement Class Members will be able to activate the credit monitoring and identity theft protection services after the Effective Date. *Id.*

Startek will pay for the credit monitoring and identity theft protection services separate and apart from other settlement benefits. *Id.*

39.     This benefit of the settlement bears with it significant value. The Experian Identity Works product is not offered at retail, but the comparable 1B retail product offered by Experian at retail is $17.99 per month.[2] Thus, the value of two years of this service is $431.76 per Settlement Class Member.

40.     During the settlement negotiations, it was discovered that 192 Settlement Class Members signed up for Experian Identity Works that Startek offered in the Notice of Data Breach letters sent to Plaintiffs and Settlement Class Members in response to the Data Incident.

41.     Since this product would automatically be renewed for an additional two-year term for the 192 Settlement Class Members who already signed up for Experian Identity Works, the minimum value of this settlement benefit is $82,897.92, guaranteed.  And that is if not a single additional class member signs up for the two-years of service being offered to them. If an extremely modest 2% of the remaining 24,627+ Settlement Class Members sign up for Equifax Identity Guard—which is not offered at retail, but the comparable 1B retail product is $17.99 per month,[3] the value of this benefit increases to $295,556.99 ($82,897.92+$212,659.07).

42.     In addition to the foregoing settlement benefits, Startek agrees to implement and/or maintain certain reasonable steps to adequately secure its systems and environments, including taking the steps listed in Exhibit A to the Settlement Agreement (to be filed separately under seal). S.A. ¶ 2.4. These changes will benefit those members of the Settlement Class whose information

---

[2] www.idnotify.com/select/ (last visited July 13, 2022).
[3] *Id.*

remains in Startek's possession, as well as other employees whose information is provided to Startek in the future.

*Release*

44. The release in this case is tailored to the claims that have been pleaded or could have been pleaded in this case.

45. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Startek, related to the Data Incident.

*Notice*

46. The Parties agreed to use Atticus Administration, LLC ("Atticus" or "Claims Administrator") as the Claims and Settlement Administrator.

47. Startek has agreed to pay the entirety of contractually agreed upon and authorized Costs of Claims Administration, and the costs of providing notice to the Settlement Class in accordance with the Preliminary Approval Order, which is separate and apart from the benefits available to Settlement Class Members. Services to be performed by the Claims Administrator must be previously approved by Startek with such approval not to be unreasonably withheld. S.A. ¶ 3.2.

48. The cost of notice and claims administration is currently estimated at $51,016 (through completion of the claims process) and is another substantial benefit of this Settlement.

49. Subject to approval of the Court, within thirty (30) days of entry of the Preliminary Approval Order (S.A., Ex. E), Atticus will begin mailing the Short Notice (S.A.,Ex. B) to Settlement Class Members via first-class mail to the postal address in the Class Member Information provided by Startek to Atticus pursuant to the Settlement Agreement. S.A. ¶¶ 3.2(d). Mailing the Short Notice shall be completed within forty-five (45) days of the date of the entry of

the Preliminary Approval Order. *Id*. The Short Notice provides clear and concise information about the Settlement, as well as the sources Settlement Class Members can go to for additional information.

50.     In addition to the individual first-class mail notice, the Claims Administrator will establish and maintain a dedicated settlement website that will be updated throughout the claims period with the Long Form Notice and Claim Form approved by the Court, as well as the Settlement Agreement. S.A. ¶¶ 3.2(c), (e). g).

51.     The Long Notice (S.A., Ex. C) that will be made available at the Settlement Website explains the terms of the Settlement Agreement, provides contact information for proposed Class Counsel, and explains the different options available.

52.     The Claims Administrator will also establish and maintain a toll-free help line to provide Settlement Class Members with additional information about the Settlement, and will provide copies of the Long Notice, Claim Form, and Settlement Agreement on request. S.A. ¶¶ 3.2(f)-(g).

***Claims Process***

53.     The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object.

54.     Class Members will have ninety (90) days from the date Notice commences pursuant to the Settlement Agreement to complete and submit a claim to the Claims Administrator. S.A. ¶ 2.1.5.

55.     The Claim Form, attached to the Settlement Agreement at **<u>Exhibit D</u>**, is written in plain language to facilitate Settlement Class Members' ease in completing it.

*Exclusions*

56.    Settlement Class Members will have up to and including sixty (60) days following the date Notice commences pursuant to the Settlement Agreement  to decide whether to exclude themselves from the Settlement. S.A. ¶ 4.1.

57.    Similar to the timing of the claims process, the timing with regard to objections and exclusions is structured to give Class Members sufficient time to review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement.

58.     Any Settlement Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the Post Office box designated in the Long Notice. *Id.*

59.    A written opt-out notice must include an individual signature and must clearly manifest a Person's intent to be excluded from the Settlement Class. *Id.*

60.    To be effective, a written opt-out notice must be postmarked no later than sixty (60) days from the date Notice commences pursuant to the Settlement Agreement. *Id.*

61.    The Opt-Out Members shall not be eligible to receive any Settlement Benefits under, and shall not be bound by the terms of, the Settlement Agreement or the Judgment. *Id.* ¶ 4.2. The Opt-Out Members shall also waive and forfeit any and all rights they may have to appear separately regarding and/or to object to the Settlement Agreement. *Id.*

*Objections*

62.    Any Settlement Class Member who wishes to object to the Settlement shall submit a timely, written notice of his or her objection no later than sixty (60) days from the date Notice commences pursuant to the Settlement Agreement (the "Objection Deadline"). *Id.* ¶ 5.1.

63.    Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing, and; (vii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation). *Id.*

64.    To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court by the Objection Deadline. The objection must be served concurrently therewith upon Class Counsel David K. Lietz, Milberg Coleman Bryson Phillips Grossman, PLLC, 5335 Wisconsin Avenue NW, Suite 440, Washington, DC 20015, dlietz@milberg.com; and counsel for Startek, Christopher H. Wood, Lewis Brisbois Bisgaard & Smith LLP, 1700 Lincoln Street, Suite 4000, Denver, CO 80203. *Id.* ¶ 5.1.

*Service Award, Fees, and Costs*

65.     The Parties did not discuss the payment of attorneys' fees, costs, expenses, and/or service awards to Representative Plaintiffs until after the substantive terms of the settlement had been agreed upon, other than that Startek would pay reasonable attorneys' fees, costs, expenses, and a service award to Representative Plaintiffs as may be agreed to by Startek and proposed Class Counsel and/or as ordered by the Court. *Id.* ¶

66.     The Settlement Agreement calls for a reasonable service award to Plaintiffs in the amount of $2,500 each, subject to approval of the Court. S.A. ¶ 7.3. The Service Awards are meant to recognize Plaintiffs for their efforts on behalf of the Class, including assisting in the investigation of the case, reviewing the pleadings, answering counsel's many questions, and reviewing the terms of the Settlement Agreement. The named Plaintiffs were not promised a service award, nor did they condition their representation on the expectation of a service award.

67.     Startek has also agreed to pay, subject to Court approval, up to $210,000 to proposed Settlement Class Counsel for combined attorneys' fees and costs. This amount is in addition to any benefits provided to the Settlement Class Members and the cost of settlement administration, including the Claims Administrator and notice. *Id.* ¶ 7.2.

68.     Proposed Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards 14-days prior to Settlement Class Members' deadline to exclude themselves from the Settlement Class or to object to the Settlement Agreement.

69.     It is my opinion that the Settlement provides fair, adequate, and reasonable result for Representative Plaintiffs and Settlement Class Members.

*        *        *        *        *        *        *        *        *        *        *        *        *

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that this declaration was executed in Washington, D.C. on this 16th day of August 2022.

*/s/ David K. Lietz*
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com