# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| RYAN HAWKINS and TAMARA KIRTLEY, individually and on behalf all others similarly situated, </br></br>    Plaintiffs,</br></br>v.</br></br>STARTEK, INC.</br></br>    Defendant. | )</br>)</br>)</br>)  **CASE NO. 1:22-cv-00258-RMR-NRN**</br>)</br>)  **CLASS ACTION**</br>)</br>)  **JURY TRIAL DEMANDED**</br>)</br>)</br>)</br>) |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
David K. Lietz
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
Email: dlietz@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
Email: gklinger@milberg.com

*Attorneys for Plaintiffs and the Putative Class*

i

Plaintiffs Ryan Hawkins and Tamara Kirtley submit this Motion for Final Approval of Class Action Settlement and Memorandum in Support.

## I. INTRODUCTION

On October 24, 2022, this Court preliminarily approved the Settlement between Plaintiffs Hawkins and Kirtley and Defendant Startek, Inc. ("Startek"), and ordered that notice be given to the class. ECF 45. The Settlement negotiated on behalf of the Class provides for three separate forms of monetary relief: (1) reimbursement of ordinary out-of-pocket expenses up to $500 per Class Member; (2) up to 4 hours of lost time spent dealing with the effects of the Data Incident, reimbursed at $15 per hour, and; 3) reimbursement of extraordinary expenses up to $4,500 per Class Member.

In addition to the potential monetary benefits, Plaintiffs here negotiated for significant additional identity theft protection for the Settlement Class. Settlement Class Members who previously enrolled in the Experian credit monitoring services offered by Startek in the incident response will be automatically provided two (2) years of additional identity theft protection services without the need to make an affirmative claim. Settlement Class Members who did not previously enroll in the identity protection services offered by Startek during the incident response were eligible to submit a claim for two (2) years of credit monitoring. *Id*. The retail value of two years of this service is $359.76 per Class Member.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation, opposing a substantial motion to dismiss, and prolonged arms'-length negotiations. This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by Startek, which was represented by a well-regarded law firm. This result was achieved in the face of a fully-

1

briefed motion to dismiss that created substantial challenges for Plaintiffs. *See* ECF 15. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class.

After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 90.59% of the Class, easily meeting the due process standard. *See* Declaration of Bryn Bridley Regarding Notice Dissemination and Settlement Administration, attached hereto as Exhibit 1, ¶ 9. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. *Id*. at Exhibits B and C. Out of 24,819 Settlement Class Members, **none** sought to be excluded from the Settlement, and **none** have objected. *Id*. ¶¶ 20-21.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant the Plaintiffs' request for attorneys' fees, expenses, and service awards.

## II.   INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 41) filed on August 16, 2022 and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith**.** Plaintiffs

also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 47), filed on January 9, 2023.

### III. SUMMARY OF SETTLEMENT

#### A. Settlement Benefits

The proposed Settlement Class consists of: "All persons to whom Startek sent a notice of the Data Incident on or about January 21, 2022." S.A. ¶ 1.23. The Settlement Class includes approximately 24,819 individuals.

*1.     Documented Ordinary Expenses and Lost Time Reimbursements*

Settlement Class Members are eligible for: (a) ordinary expense reimbursements for out-of-pocket expenses related to the Data Incident: (b) fees for credit reports, credit monitoring, or other identity theft insurance product purchased between June 26, 2021 through and including the end of the Claims Deadline related to the Data Incident; (c) up to four (4) hours of lost time spent dealing with the Data Incident (calculated at the rate of $15/hour), if at least one (1) full hour was spent dealing with the Data Incident. S.A. ¶¶ 2.1.1-2.1.3. Claims for ordinary expense reimbursements and/or lost time are subject to a $500 cap per Settlement Class Member. *Id.*

*2.     Documented Extraordinary Expense Reimbursements*

Settlement Class Members are eligible for extraordinary expense reimbursements up to $4,500 per Settlement Class Member, if the Settlement Class Member can show through the class process that the monetary loss: (i) is actual, documented, and unreimbursed; (ii) is more likely than not caused by the Data Incident; (iii) occurred between June 26, 2021 and the Claims Deadline; (iv) is not already covered by one or more of the above-referenced reimbursed expenses; and (v) the Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement

3

for, such extraordinary losses, including, but not limited to, exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* ¶ 2.1.4.

### 3. Credit Monitoring and Identity Theft Protection Services

Settlement Class Members who previously enrolled in the 12-month Experian 1B credit monitoring and identity theft protection services, with $1 million dollars insurance coverage, will be *automatically* provided two additional years of the same services, *without the need to make an affirmative claim*. *Id.* ¶ 2.3. Settlement Class Members who did not enroll in these services will be eligible to submit a claim for two years of the same services. *Id.* Settlement Class Members will be able to activate these services after Final Approval by the Court. *Id.* Startek will pay for these services separate and apart from other settlement benefits. *Id.*

This benefit of the settlement bears with it significant value. The Experian product offered in response to the Data Incident is not offered at retail, but the comparable product at retail is $14.99 per month.[1] Thus, the value of two years of this service is $359.76 per Settlement Class Member. During settlement negotiations, it was discovered that 193 Settlement Class Members signed up for these services. Since this product will be automatically renewed for an additional two-year term for these 193 Settlement Class Members, the minimum value of this settlement benefit is $69,433.68, *guaranteed*. And that is if not a single additional class member signs up for the two-years of service being offered to them. If a modest 2% of the remaining 24,626 Settlement Class Members sign up for this benefit, the potential value of this benefit is as high as $246,622.67.

---

[1] https://reliashield.com/ (last visited Jan. 4, 2023). The comparable product changed since the Motion for Preliminary Approval from ID Select Notify to ReliaShield Prime. ReliaShield Prime is $14.99 per month per Settlement Class Member, instead of $17.99 per month for ID Select Notify.

### 4. *Security-Related Improvements*

Startek has agreed to implement and/or maintain certain security measures and enhancements in response to the Data Incident through December 31, 2023. *Id.* ¶ 2.4.

### B. Fees, Costs, and Service Awards

Plaintiffs previously moved for a combined attorneys' fee and expense award of $210,000. *See* ECF 47. Plaintiffs also moved for and seek reasonable service awards in the amount of $2,500 for each named Plaintiff ($5000 total). There has been no objection to the attorneys' fee request, and no opposition was filed to Plaintiffs' motion for attorneys fees, expenses, and service awards.

## IV. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. ECF 45. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 41), this Court should certify the class for purposes of final approval of the Settlement.

Next, the Court must determine whether the settlement is fair, reasonable, and adequate. *See Reiskin v. Reg'l Transportation Dist. Colorado*, No. 14-CV-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (settlement may be finally approved when it is fair, reasonable, and adequate). "The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F. Supp.3d 1003, 1007 (D. Colo. May 19, 2014). Approval of a proposed settlement is within the

sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the 10th Circuit, approval of a class action must also satisfy the factors set out by the court in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

## V.  ARGUMENT

Here, the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, and should be finally approved.

6

### 1. *Whether the settlement was fairly and honestly negotiated.*

The negotiations in this matter occurred at arm's length. See ECF 41-1 (Lietz Decl.) at ¶¶ 22-25. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### 2. *The Strength of the Plaintiffs' Case.*

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Startek's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc*., No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### 3. *The risk, expense, complexity, and likely duration of further litigation.*

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately roughly 24,819

7

individuals (each of whom may need to establish cognizable harm and causation); a complicated and technical factual background; and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers (in the form of complimentary credit monitoring). Defendant has already asserted (by way of their motion to dismiss that was pending when settlement was reached) and will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further litigation.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

### 4. *The risk of maintaining class action status throughout the trial.*

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). In one of the four significant data incident class actions mentioned above that have been certified on a national basis, this risk is very real. *In re Brinker, supra*, is currently on appeal to the United States Court of Appeals for the Eleventh Circuit, and it is currently an open question whether the *Brinker* plaintiffs will maintain class certification. This over-arching risk simply puts a point on what is true in all class actions – class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

### 5. *The amount offered in settlement.*

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible to make a claim for up to $500 in reimbursements for expenses and lost time, and up to $4,500 in reimbursements for extraordinary expenses related to the Data Incident. Class Counsel obtained up to $475,000 in ordinary and extraordinary loss benefits, an amount that includes the ability to claim 4 hours of lost time spent dealing with the effects of the Data Incident, reimbursed at $15 per hour, by merely attesting that time was spent.

Moreover, those 193 Class Members who previously signed up for the Experian credit monitoring will have their terms automatically extended by two-years, and the remainder of the

9

Class received an opportunity to sign up for two years of the same service. This benefit of the settlement bears with it significant value. The Experian credit monitoring service has a retail value of retail value of $14.99 per month, based upon what Experian charges for a comparable product. Thus, the value of two years of this service is $359.76 per Class Member. Since this product would be automatically renewed for an additional two-year term for the 193 Settlement Class Members who already signed up for the Experian credit monitoring offered by Startek as part of its Data Incident response, the minimum value of this settlement benefit is $69,443.68 guaranteed. This settlement is a strong result for the Class, and is in line with other settlements in cases involving data incidents of similar scope. Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See* Declaration of David Lietz, Exhibit 2, ¶ 3; *see also Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

  **6. *The amount of discovery completed.***

Before entering into settlement discussions on behalf of class members, counsel should have sufficient information to make an informed decision. Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Startek and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to Startek's current and former employees. ECF 41-1 ¶ 17. The parties also informally exchanged significant non-public information concerning the Data Incident and the size of the Class in preparation for a successful mediation. *Id*. at ¶ 24. Defendant confidentially shared

considerable information about the post-incident investigation into the facts and circumstances of the Data Incident, including a summary of the investigation report's findings. *Id.*

Although the parties did not engage in formal discovery, Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. ECF 41-1 ¶ 29. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Plaintiffs are well informed about the strengths and weaknesses of this case.

### 7. *The experience and views of counsel.*

The judgment of experience Plaintiffs' counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data incident litigation, and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are fair and reasonable in light of reported average out-of-pocket expenses incurred due to a data security incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiff's counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be

considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. *See* Ex. 2, ¶ 3.

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

### 8. *Reaction of the Class Members*.

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a class of 24,819, no Class Members requested exclusion and there were no objections. *See* Exhibit 1, ¶ 12. 548 total claims were submitted, including 366 claims from Settlement Class Members. *Id*. at ¶¶ 14, 19. 254 of those claims were found valid. *Id*. at ¶ 18. If one adds only the valid claims (254) with the number of persons receiving the automatic renewal of the credit monitoring (193), 1.8% of the Settlement Class will receive a benefit from this Settlement. This percentage is commensurate with the claims rates in approved data breach settlements across the country, including both common fund and claims-made settlements. Ex. 2, ¶ 4.

Under all the *Jones* factors, this proposed settlement is fair, reasonable, and adequate, and should be finally approved.

### 9. *The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as well as Rule 23.*

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a

response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), cert. denied sub nom. *Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

13

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On November 23, 2022, Atticus caused the "Short Notice" in the form of a postcard to be sent by U.S. first class mail to 24,816 Settlement Class Members. Ex. 1, ¶ 7. The Short Notice provided an overview of the settlement terms, the benefits available, the options available to Class Members, and the settlement website and toll-free number where additional settlement information could be obtained. *Id.* After all address tracings and remailings, Atticus delivered 22,482 Short Notices, equating to a delivery success percentage (or "reach rate") of 90.59. *Id*. at ¶ 8. Atticus (through its representative Ms. Bridley, an experienced professional in the field of providing class action notice) offers the opinion that the delivery success percentage of 90.59% meets and exceeds the 70% threshold necessary to satisfy due process requirements. *Id*. at ¶ 9.

Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in Colorado, the Tenth Circuit and across the United States. 90.59% is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010).

In addition to the direct mail notice, Atticus established a dedicated website for the Settlement with an easy to remember domain name (www.startekclassactionsettlement.com). *Id*. ¶ 10. Relevant documents were posted on the website for Settlement Class Members to review. To date, there have been 3,877 visits to the Settlement Website. *Id*. Also, on November 23, 2022, a toll-free telephone number (888-200-7034) was established for the Settlement. *Id*. ¶ 11. The toll-free telephone number was prominently displayed in all notice documents. The settlement line is answered by Atticus' live customer support specialists during normal business hours of 8:00 a.m.

to 4:00 p.m., Monday through Friday. Settlement Class Members who call the toll-free line after hours or when a specialist is unavailable during covered hours are provided the option to leave a voicemail message and receive a return call from the support team the next business day. In total, 40 calls have been received on the toll-free telephone line. *Id*.

In short, the Settlement Administrator and Class Counsel executed a highly successful notice program that meets all the requirements of Rule 23, and satisfies due process requirements. The Notice Plan provided the best notice practicable, and afforded enough time to provide full and proper notice to Settlement Class Members before the opt-opt and objection deadlines.

## VI.   CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant cash relief, and valuable credit monitoring to all those who previously signed up as well as to those who made claims. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of the *Jones* factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 41) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 47), Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed with the Motion for Final Approval, finally certify the Settlement Class and appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award Named Plaintiffs a service award in the amount of $2500, grant Settlement Class Counsel combined attorneys' fees and expenses of $210,000, and grant final approval of this Settlement.

Dated: March 30, 2023

Respectfully submitted,

/s/*David K. Lietz*
David K. Lietz
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
Email: dlietz@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
Facsimile: (865) 522-0049
Email: gklinger@milberg.com

*Attorneys for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I, David K. Lietz, hereby certify that a copy of this Plaintiffs' Motion for Final Approval of Class Action Settlement and Memorandum in Support was sent to counsel of record via the federal court's e-filing system.

Dated:   March 30, 2023                              By: */s/ David K. Lietz*
                                                             David K. Lietz